UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 21-cr-00451-CJN |
| | ) | |
| SUZANNE IANNI, | ) | |
| Defendant | ) | |

## **MOTION TO DISMISS – SELECTIVE PROSECUTION**

Suzanne Ianni's individual conduct at the Capitol Building on January 6, 2021 mirrored that of hundreds of others who recently protested at the same location. Ms. Ianni was accused of committing federal crimes for her behavior. The other protestors were not. The difference between the two is political. She moves under Federal Rule of Criminal Procedure 12(b)(6)(iv) to dismiss the charges against her.

## **Procedural Background**

Suzanne Ianni is charged with three (3) non-violent misdemeanors – Entering or Remaining in Restricted Building or Grounds under 18 U.S.C. §1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. §1752(a)(2), and Disorderly Conduct in a Capitol Building under 40 U.S.C. §5104(e)(2)(D). She was charged by Information July 2, 2021.

## **Factual Background**

On January 6, 2021, Suzanne Ianni went to Washington DC to support Donald Trump. She and other demonstrators walked outside the Capitol grounds holding flags and banners with political messages. As the day progressed, she followed the crowd and walked into the United States Capitol building. She entered through an open Senate fire door. She walked down the hallway. The group with whom she walked was stopped at a hallway intersection by police. Video evidence shows Ms. Ianni raising her arms in the air as people in the group speak with police officers. Presumably, this gesture forms the basis for the government's allegations

1

of disorderly behavior in charges 1 and 2, necessary elements of both crimes. Minutes later, she left through a side door.

She hit no one. She damaged nothing. She left when she was told to.

## <u>Argument</u>

When enforcing the country's laws, federal prosecutors have discretion to make policy and employ practical considerations, but that power is not limitless. <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985). When a criminal prosecution is based on "an unjustifiable standard such as race, religion, or other arbitrary classification" it amounts to a "practical denial" of equal protection and cannot stand. <u>United States v. Armstrong</u>, 517 U.S. 456. 464-65 (1996) (and cases cited therein). Just as a person may not be targeted for prosecution due to his or her membership in a particular group, a prosecution also runs afoul of the Constitution when a person is prosecuted due to his or her exercise of protected statutory and constitutional rights. <u>Wayte</u>, 470 U.S. at 608. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." <u>Armstrong</u>, 517 U.S. at 463.  Where, as here, a person's conduct lands in cross section of the protections of the First Amendment and the Equal Protection clause, it is well established that the "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views . . . it may not select which issues are worth discussing or debating in public facilities." <u>Police Dept. of Chicago v. Mosely</u>, 408 U.S. 92, 96 (1972). The Court has "frequently condemned such discrimination among different users of the same medium for expression." <u>Id.</u>

Because a selective prosecution claim is based upon due process principles, it is analyzed in the same manner as other due process violations. <u>Wayte</u>, 470 U.S. at 608. The guarantee of equal protection under the law is violated when a government action has both a discriminatory effect and a discriminatory purpose. <u>Armstrong</u>, 517 U.S. at 465. A discriminatory effect is evident when otherwise similarly situated individuals receive different treatment corresponding to their

membership in a different group or some other impermissible differentiating characteristic. Id. Evidence of discriminatory intent is rarely explicit, so it need not be demonstrated by direct evidence; it may instead be shown by means such as statistical disparities and other indirect evidence. See United States v. Khanu, 664 F. Supp. 2d 28, 33 (D.D.C. 2009); see also Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266-67 (1977) (improper purpose may be shown by clear pattern unexplainable on other grounds, historical background, or departures from normal procedure).

A. *'Similarly Situated Capitol Protesters Have Not Been Similarly Prosecuted*

Political protests at the Capitol, and arrests of those protestors, are the norm. Prosecution in the United States District Court is not. A review of recent protest-related arrests and prosecutions shows that overwhelmingly, demonstrators are arrested for violations of D.C. Code §22-1307 or DC Code §10-503, and given the opportunity to pay a small fine and immediately resolve their matters without a finding of guilt through the "post-and-forfeit procedure" described in D.C. Code § 5–335.01. Some examples are illustrative.

On September 25, 2017, 181 people were arrested for unlawful and disruptive activities in a Senate Finance Committee hearing room.  Many of these disability rights advocates removed themselves from their mobility devices in furtherance of their protests, so that they had to be carried or dragged out of the building. All were charged pursuant to DC Code §10-503.16 and D.C. Code §22-1307. [1]

On June 28, 2018, 575 people protesting immigration policies were arrested on Capitol Grounds for unlawfully demonstrating in the atrium of the Hart Senate Office Building. All were charged pursuant to D.C. Code §22-1307 and released. The

---

[1] U.S. Capitol Police Press Release (Sept. 25, 2017), available at https://www.uscp.gov/media-center/press-releases/uscp-arrests-181-protesters-demonstration-activity-senate-finance; Rhodan, Maya, "Protesters Got Dragged Out of a Hearing on the Republican Health Care Repeal Bill," Time, (Sept. 25, 2017), available at https://time.com/4956397/graham-cassidy-republican-health-care-protests/

official press release from U.S. Capitol Police went so far as to include information for how the protesters could most conveniently pay their fines.[2]

During the confirmation hearings for Supreme Court Justice Brett Kavanaugh in September and October 2018, more than 200 protesters were arrested at the Capitol building.[3] On October 5, 101 people were arrested and charged under either D.C. Code §22-1307 or DC §10-503.16(b)(4).[4] As on January 6, 2021, Vice President Mike Pence was present at and presiding over the session of Congress as protestors interrupted.[5]  On October 6, large organized groups of protesters broke through and climbed over police barricades meant to close off certain parts of the Capitol Building; some live streamed and posted photographs and videos of their unlawful demonstrations on social media .[6] Court records appear to indicate that just one protester, who had previous arrests for unlawful protest activities, had his case prosecuted in the United States District Court.[7]

Throughout the fall and winter of 2019, climate change protesters were arrested on a weekly basis for unlawful demonstrations at the Capitol. Actress Jane Fonda, among the protest's organizers, was arrested at least five weeks in a row. Although she spent a night in jail prior to her court appearance due to her repeated

[2] U.S. Capitol Police Press Release (June 28, 2018), available at https://www.uscp.gov/media-center/press-releases/us-capitol-police-charge-approximately-575-individuals-unlawfully; Rivas, Karolina and Mariam Khan, "Nearly 600 Protesters at Women's March Arrested on Capitol Hill," ABC News, (June 28, 2018), available at https://abcnews.go.com/Politics/womens-march-protesters-call-end-family-separation-capitol/story?id=56240419; Fram, Alan and Matthew Daly, "Hundreds Arrested in DC Protesting Trump Immigration Policy," AP News, (June 28, 2018) available at https://apnews.com/article/immigration-north-america-donald-trump-arrests-immigration-policy-bde50e41e89d4b6d91a001b558769835

[3] Breslow, Jason, "The Resistance at the Kavanaugh Hearings," NPR, (Sep. 8, 2018), available at https://www.npr.org/2018/09/08/645497667/the-resistance-at-the-kavanaugh-hearings-more-than-200-arrests

[4] U. S. Capitol Press Release (October 5, 2018), available at https://www.uscp.gov/media-center/press-releases/us-capitol-police-respond-multiple-instances-unlawful-demonstration

[5] Fram, Alan, et al, "Kavanaugh Sworn to High Court After Rancorous Confirmation," AP News, (Oct. 6, 2018), available at https://apnews.com/article/north-america-ap-top-news-sexual-misconduct-supreme-courts-courts-8234f0b8a6194d8b89ff79f9b0c94f35

[6] Rosenberg, Adam, "Brett Kavanaugh Protestors Ignore Police Barricades, Occupy the U.S. Capitol," yahoo!news, (Oct. 6, 2018), available at https://www.yahoo.com/news/brett-kavanaugh-protesters-ignore-police-194043428.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAK_dv53JnNnUin5JikI8bifOcB2QOHRfco98qqFfq8cH8LPaoDk2VTmSLW5yLInYQA1Y4flClVnJOqzL9NdmU1aFJEsJUG8FgrMklQTb7LntoFW1LZ_xbfXJiOmtbbXBXzJzbru0qN2perDWxrtMAdlkqZ66xi49XIiWhxAI3LxC

[7] United States v. Barry, No. 1:18-mj-00111-RMM (D.D.C.).

arrests, she did not face federal charges.  Her confederates were charged pursuant to D.C. Code §22-1307 and released upon paying a fine. [8]

On July 15, 2021, a group of voting rights protesters demonstrated in a prohibited area on Capitol Grounds, which remains closed to the public. Despite repeated warnings to disperse, they refused. Nine were arrested, including U.S. Representative Joyce Beatty. All were charged pursuant to D.C. Code §22-1307. Several were then invited to a meeting with Vice President Kamala Harris, who praised their efforts.[9]

Each of these instances involved protesters advocating for causes generally associated with politically liberal beliefs. These various examples indicate a consistent and established practice of addressing political protests at the Capitol within the local D.C. court system and without seeking convictions for even high-profile and repeat protesters.

B. _Federal Prosecution of Contemporaneous Protest Activity Reflects Bias_

The relative handling of federal charges for assaultive behavior levied against protesters from January 6, 2021, versus those charged in protests in Portland, Oregon in the summer of 2020 suggests that this ideological disparity is not a coincidence.  Whereas defendants charged with violent conduct in connection with politically progressive racial justice protests in Portland were granted dismissals, had their cases moved out of federal court, or received offers of deferred prosecution agreements, Ms. Ianni's so-called co-defendants (people who were charged with violent conduct on the same date as her protest activity, but not working in concert with her) facing similar charges of assault on a federal officer received no such concessions.

---

[8] Mandell, Andrea, "Jane Fonda Rings in 82nd Birthday with 5th Arrest at Climate Change Protest," USA Today, (Dec. 20, 2019), available at c/; Buckley, Cara, "Jane Fonda at 81, Proudly Protesting and Going to Jail," New York Times, (Nov. 3, 2019) available at https://www.nytimes.com/2019/11/03/arts/television/04jane-fonda-arrest-protest.html; Demick, Barbara, "The Star Power of Jane Fonda's Climate-Change Arrests," The New Yorker, (Dec. 27, 2019), available at https://www.newyorker.com/news/daily-comment/jane-fondas-climate-change-star-power
[9] U.S. Capitol Police Press Release (July 15. 2021), available at https://www.uscp.gov/media-center/press-releases/illegal-demonstration-capitol-grounds; Stewart, Briana, "Kamala Harris meets with Black women activists and voting rights advocates," ABC News, (July 16, 2021), available at https://abcnews.go.com/Politics/protesters-arrested-capitol-hill-including-rep-joyce-beatty/story?id=78872290

This Court has had the opportunity to examine these discrepancies in the matters of United States v. Bouchard, No. 3:20-mj-00165 (D. Or.), United States v. Webb, No. 3:20-mj-00169 (D. Or.), and United States v. Johnson, No. 3:20-mj-00170 (D. Or.) as compared to the matter of United States v. Judd, No. 1:21-cr-00040-TNM (D.D.C.). This Court noted as "suspicious" that Mr. Judd, who injured nobody during his conduct in D.C. on January 6, 2021, faced more serious charges than the three other defendants, against whom "incredibly" the government dismissed charges despite injuring and striking officers in the riots in Portland.  Judd, Memorandum Order, ECF No. 203. These defendants are not similarly situated to Ms. Ianni, and she does not argue that they are—the charges against them are objectively more serious than those against her. The different outcomes of their cases, however, evince discriminatory purpose.

C. *Ms. Ianni Has Been Unfairly Targeted for Federal Prosecution*

There is no question that many individuals protesting at the Capitol on January 6, 2021, engaged in unlawful conduct. Some of the conduct was riotous and violent. The group charged, however, is not a monolith.  Ms. Ianni's conduct was neither riotous, nor violent. The people facing charges stemming from the January 6 incident are an unaffiliated group of hundreds of individuals with overlapping conservative political beliefs. Ms. Ianni's individual conduct, and that of many of her other "co-defendants," is in line with the type of normal protest activity associated with non-prosecution or nominal penalty within the local D.C. court system. She differs from these lightly handled protesters in viewpoint only.

No other legitimate consideration explains the differential treatment of Ms. Ianni. See Branch Ministries v. Rossotti, 211 F.3d 137, 145 (D.C.Cir. 2000) quoting United States v. Hastings, 126 F.3d 310, 315 (4th Cir. 1997) ("no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions"); see also Wayte, 470 U.S. at 607 (noting various permissible prosecutorial factors). She does not have a criminal record. She did not use violence or cause damage to property. She did not encourage the use of violence by other people participating in the protest. While certain of her co-defendants engaged in

6

more serious, and even violent, misconduct, "guilt by association is a philosophy alien to the traditions of a free society." <u>NAACP v. Overstreet</u>, 384 U.S. 118, 122 (1966) (Douglas, J. dissenting from dismissal of writ of certiorari); <u>see also</u> <u>Mercer v. United States</u>, 724 A.2d 1176, 1185 (D.C. 1999) ("this court has admonished against engaging in tactics that promote the concept of 'guilt by association'"); <u>Irick v. United States</u>, 565 A.2d 26, 30 (D.C. 1989) ("guilt by association is a very dangerous principle"). The government is within its rights and duties to prosecute violations of federal law, but it must do so evenly.

## <u>Conclusion</u>

Suzanne Ianni is an individual. She exists separately and distinctly from any group to which she may belong. Yet, her group association and its corresponding political beliefs appears to be the most important factor in the federal government's prosecution. Had she engaged in the same conduct in one of any number of recent protests linked to progressive causes at the Capitol, precedent shows that the charges and penalties she would face would be substantially different. This is selective prosecution. It runs contrary to the Constitution and warrants dismissal of the charges against her.

<div style="margin-left: 50%;">

Respectfully submitted,
SUZANNE IANNI,
By her attorney,
Pro Hac Vice

</div>

Date: February 12, 2022

<div style="margin-left: 50%;">

/s/ *Henry Fasoldt*
C. Henry Fasoldt, BBO# 667422
185 Devonshire Street, Ste. 302
Boston, MA 02110
henry@bostondefenselaw.com
617-338-0009 – office

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this date, February 12, 2022

/s/ *Henry Fasoldt*
Henry Fasoldt

--