**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No. 21-cr-0451-CJN** |
| | **:** | |
| **SUZANNE IANNI** | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

## <u>OPPOSITION OF THE UNITED STATES TO DEFENDANT'S MOTION TO DISMISS FOR SELECTIVE PROSECUTION</u>

The United States of America respectfully opposes Defendant Suzanne Ianni's Motion to Dismiss for Selective Prosecution (ECF No. 35). Ianni alleges that the government selectively targeted her for prosecution due to her political beliefs. This Court rejected similar allegations advanced by the defendant in *United States v. Miller*, 1:21-cr-199 (D.D.C. Dec. 21, 2021) (ECF No. 67), and the same outcome is warranted here. Because Ianni's motion does not satisfy the rigorous standard for dismissal based on selective prosecution, this Court should deny it.

### <u>Factual Background</u>

The government charged Ianni with one count each of entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D). Each misdemeanor charge stems from Ianni's conduct at the U.S. Capitol on January 6, 2021.

On January 6, a joint session of Congress convened to certify the votes of the Electoral College for the 2020 Presidential Election. At approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, as President of the Senate, presided over the joint session, and, later, the Senate proceedings.

As the proceedings continued, a large crowd gathered outside the Capitol.  Officers with the U.S. Capitol Police and the Metropolitan Police Department attempted to keep the crowd away.  Shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol as others encouraged and assisted them.  Twenty minutes later, representatives, senators, and Vice President Pence evacuated their respective chambers in response to this intrusion.  As individuals breached the Capitol building, multiple law enforcement agencies assisted the U.S. Capitol Police in protecting the Capitol building, prohibiting additional people from entering, and expelling the crowd already inside.  That crowd included Ianni.

Ianni traveled to Washington, D.C. with the "Super Happy Fun America" organization.  On December 29, 2020, a post on the organization's Twitter account wrote that "SHFA will be in DC once again on January 6th to get wild."  Ianni identified herself as the "lead organizer of the 11 buses."  Six days later, a Facebook post explained that Super Happy Fun America had organized a road trip to arrive "prior to a Joint Session of Congress with state electors on January 6th."  The post listed Ianni's name and phone number as the contact person.  Finally, a photo on the organization's Twitter account on showed Ianni on the bus with other members traveling to Washington, D.C. on January 5.

On January 6, 2021, Ianni marched alongside the crowd to the U.S. Capitol and entered through a Senate fire-exit door.  Video surveillance then shows Ianni walking through the Capitol Building.  At the North Appointment Desk, Ianni raised her fist in the air in front of police officers who had stopped her and the other crowd members from proceeding further.

### <u>Argument</u>

Ianni alleges the government selectively targeted her for prosecution based on her political beliefs.  In the main, she contends that the government failed to charge similar federal

offenses in response to similar conduct in other settings.  These allegations fail to establish selective prosecution and, accordingly, should be denied.

I.      **To obtain dismissal based on selective prosecution, a defendant must adduce clear evidence of both discriminatory effect and discriminatory purpose.**

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).  The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive function." *Armstrong*, 517 U.S. at 465.

A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id.* at 463, "such as race, religion, or other arbitrary classification," *id.* at 464 (citation omitted).  That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose."  *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465.  "[T]he standard is a demanding one." *Armstrong,* 517 U.S. at 463.  "[T]he D.C. Circuit has called for a

two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'"  *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossoti*, 211 F.3d 137, 144 (D.C. Cir. 2000)).[1]

## II.     Ianni fails to proffer evidence on either selective-prosecution prong.

Ianni's motion fails each prong of the selective-prosecution inquiry.  It neglects to identify any evidence (much less clear evidence) of discriminatory effect or purpose.

### A.     Ianni fails to show that the government singled her out for prosecution.

With respect to *Armstrong*'s first prong, Ianni must adduce clear evidence that "there exist persons who engaged in similar conduct and were not prosecuted."  *United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997).  An individual may be similarly situated if she "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."  *Stone*, 394 F. Supp. 3d at 31 (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.").

---

[1] The Supreme Court has imposed a "correspondingly rigorous standard for discovery in aid of such a claim."  *Armstrong*, 517 U.S. at 468.  A defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution— "discriminatory effect and discriminatory intent"—before she can demand inspection of the government's files that "might corroborate or refute the … claim."  *Id.* (citation omitted). Because Ianni's motion does not seek discovery, the government will not address this standard.

Ianni fails this showing.  Her examples mostly involve individuals who lawfully entered the U.S. Capitol and, once inside, verbally disrupted a congressional proceeding[2] or staged an unauthorized protest in the Capitol Atrium.[3]  One example documents an incident where individuals broke through a police barricade and staged an unauthorized demonstration on the Capitol steps.  ECF No. 35, at 4 & n.6.  The government charged these individuals with violations of the D.C. Code rather than federal law.

As this Court observed in *Miller*, the circumstances of these proffered examples and Ianni's conduct "differ in kind and degree."  *United States v. Miller*, 1:21-cr-199 (D.D.C. Dec. 21, 2021) (ECF No. 67), slip op. 3.  The proffered examples "did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power."  *Id.*  Ianni, by contrast, entered the U.S. Capitol for precisely that purpose.  Moreover, as another member of this Court explained, Ianni and the other "January 6 rioters attacked the Capitol in broad daylight" with "hundreds of legislators" and "[t]housands of congressional staffers" present.  *United States v. Judd*, No. 1:21-cr-40 (D.D.C. Dec. 28, 2021) (ECF No. 203), slip op. 10.  "Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters" who roamed the Capitol's corridors.  *Id.*

These situational differences represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in Ianni's case.  *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)); *see also*

___

[2] These examples include individuals who protested at a Senate Finance Committee hearing, Justice Kavanaugh's confirmation hearing, and the Senate confirmation vote.  ECF No. 35, at 3-4 & nn.1, 3, 4.

[3] These examples involves individuals who staged protests related to immigration, climate, and voting laws.  ECF No. 35, at 3-5 & nn.2, 8, 9.

*Price v. U.S. Dep't of Justice*, 865 F.3d 676, 681 (D.C. Cir. 2017) (observing that a prosecutor may legitimately consider "concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of a defendant's cooperation" in plea negotiations) (brackets and citation omitted).

After reviewing similar allegations of discriminatory effect in *Miller*, this Court held that the defendant had failed to show an entitlement to discovery under *Armstrong*'s first prong. Ianni's motion, which implicates *Armstrong*'s higher standard for dismissal, necessarily fails for the same reason.

**B.    Ianni fails to show that the government harbored an improper motive in prosecuting her.**

Even if Ianni could identify similarly situated individuals, she must also adduce clear evidence of a discriminatory purpose in the government's prosecution.  This second prong requires proof "that her prosecution was based upon an unlawful or arbitrary classification." *Stone*, 394 F. Supp. 3d at 35 (citing *Branch Ministries*, 211 F.3d at 144).  Ianni has failed to adduce any evidence that improper motives undergird her prosecution.

Ianni instead cursorily alleges that the government made disparate prosecutorial decisions for individuals charged with felony assault crimes in relation to the summer 2020 protests in Portland, Oregon as compared to individuals charged with felony assault crimes in relation to the Capitol Breach on January 6, 2020.  ECF No. 35, at 5-6.  But that comparison carries no relevance to Ianni's prosecution because the government has not charged her with assault.

In any event, this Court in *Miller* held that the government's charging decisions in Oregon "d[id] not without more show the federal government [was] pursuing its claims against Miller and others like him because of a difference in politics."  *Miller*, slip. op 4.  That observation applies equally here.  Ianni "points to no evidence of discriminatory intent other than

'personal conclusions based on anecdotal evidence.'" *Id.* (citation omitted).  She has accordingly failed her burden on *Armstrong*'s second element.

The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that Ianni's political views played no role in his office's charging decisions in this case.

### Conclusion

Because the defendant has failed to carry her burden, the Court should deny her motion to dismiss based on selective prosecution.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Brittany Keil*
BRITTANY KEIL
Assistant United States Attorney
D.C. Bar Number 500054
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7763
Brittany.keil@usdoj.gov

**Certificate of Service**

I hereby certify that on March 8, 2022, I caused a copy of the foregoing opposition motion to be served on counsel of record via electronic filing.

By: */s/ Brittany Keil*
BRITTANY KEIL
Assistant United States Attorney