# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 1:21-cr-0451 (CJN) |
| SUZANNE IANNI, | |
| *Defendant*. | |

## ORDER

This matter is before the Court on Defendant Suzanne Ianni's Motion to Dismiss for Selective Prosecution, ECF No. 35.  For the reasons discussed below, the Court denies her Motion.

Ianni faces three federal misdemeanor charges stemming from the events of January 6, 2021:  entering and remaining in a restricted building or grounds, 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, 18 U.S.C. § 1752(a)(2); and disorderly conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D).  *See* Superseding Information, ECF No. 37.  Ianni is not alleged to have engaged in violent conduct, and she argues that she is the victim of selective prosecution.  In particular, she points to the Department of Justice's charging decisions (or lack thereof) for nonviolent protestors at the Capitol for what she describes as left-leaning protests and argues that she is being discriminated against because of her political views.

The Executive Branch has "broad discretion" in "enforc[ing] the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quotation omitted); *see United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016).  But that discretion has its limits.  The Fifth Amendment prohibits the federal government from pursuing criminal charges that amounts to a "'practical denial' of equal protection of law." *Armstrong*, 517 U.S. at 465 (quoting *Yick Wo*

*v. Hopkins*, 118 U.S. 356, 373 (1886)). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* at 463.

A "presumption of regularity supports . . . prosecutorial decisions" such that, absent "clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Armstrong*, 417 U.S. at 464; *see also Fokker Servs.*, 818 F.3d at 741 ("[J]udicial authority is . . . at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary . . . generally is not competent to undertake that sort of inquiry." (quotation marks omitted)). To succeed on her claim of selective prosecution, Ianni must therefore make two showings, each by clear evidence: that the prosecution (1) had a "discriminatory effect" and (2) arose from "discriminatory intent." *Armstrong*, 517 U.S. at 465; *see also Wayte v. U.S.*, 470 U.S. 598, 608 (1985); *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982). Discriminatory effect is shown when the defendant or class of defendants was "singled out for prosecution from among others similarly situated." *Branch Ministries v. Rossoti*, 211 F.3d 137, 144 (D.C. Cir. 2000). And discriminatory intent requires proof that a prosecution was improperly motivated, such as based on race, religion, or another arbitrary classification. *Id.*

For the effect element, Ianni points to a number of "politically liberal" protests at the Capitol in which demonstrators were charged with non-federal violations and were typically given an opportunity to pay a small fine to resolve their matters immediately without a finding of guilt. *See* Def. Mot. at 3–5, ECF No. 35. For example, in 2017, 181 people were arrested in relation to a disability rights protest in a Senate Finance Committee room. In 2018, 575 people were arrested in the atrium of the Hart Senate Office Building for conduct relating to a protest of immigration policies. Also in 2018, over 200 people were arrested in the Capitol building protesting the

hearings for the confirmation of Justice Kavanaugh—and some broke through and climbed over police barricades meant to close off certain parts of the Capitol. In 2019, a number of climate change protesters were repeatedly arrested (sometimes weekly) for demonstrations at the Capitol. And in July 2021, nine voting rights protesters, including a member of the U.S. House of Representatives, were arrested for demonstrating in the Hart Senate Office Building even though it was closed to the public.

Ianni asserts—and the government does not contest—that none of these demonstrators was charged with a federal offense. Instead, Ianni contends, many were prosecuted for D.C. Code violations and were given a light fine or spent a night or two in jail. *Id.* at 3–5.[1]

The government does not dispute the facts regarding those prior prosecutions, but instead argues Ianni is not "similarly situated" to any of them. *See United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced."). The government argues that those prior protestors had lawfully entered the U.S. Capitol or, as to those who broke through certain police barriers, they demonstrated outside the Capitol buildings. The government contends that Ianni's examples "did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power." Gov't Opp. at 5, ECF No. 36 (quoting *United States v. Miller*, 1:21-cr-119 (D.D.C. Dec. 21, 2021) (ECF No. 67), slip op. at 3). And the government notes that while Ianni is only charged with nonviolent conduct, other "January 6 rioters attacked the Capitol in broad

---

[1] Indeed, Ianni contends, the "politically liberal" voting-rights protestors of 2021 were invited to a meeting with Vice President Harris, who praised their conduct. Def. Mot. at 3, 5.

daylight with hundreds of legislators and thousands of congressional staffers present." *Id.* (quotation marks and alterations omitted).

The Court agrees with the government that there are "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" as to Ianni than as to those she argues are similarly situated. *Branch Ministries*, 211 F.3d at 145; *see also United States v. Miller*, 1:21-cr-119 (D.D.C. Dec. 21, 2021) (ECF No. 67). The particular combination of circumstances at issue here—including entering the Capitol while it was closed to the public; being among a very large demonstration; being among a crowd in which others were aggressive or violent (some shockingly so); and targeting a highly sensitive Congressional proceeding—are too different from any example or combination of examples that Ianni has pointed to for a claim of selective prosecution. To be sure, there are *aspects* of Ianni's conduct that may be similar to, or perhaps less problematic than, the conduct in certain of the examples to which Ianni points. *See* Pl. Mot. at 1–2, 6–7. But when put in context of the events of January 6, 2021, her conduct is not sufficiently similar to the examples to which she points for her to meet the rigorous standard for proving discriminatory effect. *See Irish People*, 684 F.2d at 946 ("Discrimination cannot exist in a vacuum; it can only be found in the unequal treatment of people in similar circumstances."); *see also United States v. Judd*, No. 1:21-cr-40 (D.D.C. Dec. 28, 2021) (ECF No. 203), slip op. 11 (concluding that because of the "uniqueness" of the events of January 6, courts may find it difficult to fault the government's prosecution).

Given the foregoing, the Court need not reach the discriminatory intent element.

Accordingly, it is

**ORDERED** that the Motion to Dismiss is **DENIED**.

DATE: April 6, 2022

CARL J. NICHOLS
United States District Judge