**United States District Court**
**For The District of Columbia**

| | |
|---|---|
| **United States of America,**<br><br>         v.<br><br>**Suzanne Ianni,**<br><br>         **Defendant.** | **Case No. 21-cr-00451 (CJN)** |

**Motion for Early Termination of Probation**

    Pursuant to 18 U.S.C. § 3564(c), Suzanne Ianni, through undersigned counsel, moves to terminate her 30-month term of probation as an illegal sentence under *United States v. Little*, 78 F.4th 453 (D.C. Cir. 2023). This Court was without the authority to impose both imprisonment and probation when it originally sentenced Ms. Ianni. She has fully served the imprisonment portion of her sentence, and therefore her probation must be terminated because she cannot twice be punished for the same offense. *See Ex Parte Lange*, 85 U.S. 163 (1873); *In Re Bradley*, 318 U.S. 50 (1943). Under 18 U.S.C. § 3564(c), the Court has the authority to grant the relief she requests forthwith.

**I.**  **Background**

    In January 2021, Ms. Ianni was arrested for her participation in activities at the U.S. Capitol on January 6, 2021. On February 8, 2021, she was released on her personal recognizance, a status in which she successfully remained for close to two years, through sentencing on December 2, 2022. *See* Min. Entry (Feb. 8, 2021); Order, ECF No. 9 (Feb. 12, 2021). In September 2022, pursuant to a plea agreement, Ms. Ianni pled guilty to a single petty offense

1

(Count 3) of Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). *See* Plea Ag't, ECF No. 46 (Sep. 14, 2022); Min. Entry (Sep. 14, 2022).

The government requested a split sentence of 30 days of incarceration and three years of probation, 60 hours of community service, and $500 in restitution. *See* Gov't Sent'g Mem. at 1, ECF No. 54 (Nov. 28, 2022). Ms. Ianni requested a year of probation, 40 hours of community service, and $500 in restitution, and stated that the court did not have the power to impose a split sentence of incarceration and probation. *See* Def. Sent'g Mem. at 1, ECF No. 53 (Nov. 28, 2022); Sent'g Hr'g Trans. (Dec. 2, 2022) at 22.

On December 2, 2022, this Court sentenced Ms. Ianni to 15 days of incarceration, followed by 30 months of probation, and $500 in restitution. *See* Judgment, ECF No. 57 (May 6, 2022). As special conditions of supervision, Ms. Ianni was required to remove firearms from areas she controlled or had access to; complete 60 hours of community service within 6 months of release; and pay the full restitution within 30 days of the judgment. *Id.* at 5. On February 6, 2023, Ms. Ianni finished serving her term of incarceration and is currently approximately 9 months into her 30-month term of probation. She is in compliance with her probation and has satisfied each of her special conditions of supervision.

**II.    Legal Standard**

Motions for early termination of probation are governed by 18 U.S.C. § 3564(c). Section 3564(c) allows a court to terminate probation at any time for a misdemeanor or infraction upon

consideration of: (1) the applicable 18 U.S.C. § 3553(a) factors, (2) "the conduct of the defendant," and (3) "the interest of justice." 18 U.S.C. § 3564(c).[1]

### III. Argument

#### A. *Ms. Ianni is serving an illegal sentence of probation that this Court has the authority to terminate.*

The probationary term that Ms. Ianni is currently serving following her imprisonment term is not statutorily permitted for her single petty offense, and maintaining her probation would not be in the interest of justice. More specifically, because Ms. Ianni has fully served the imprisonment portion of her sentence, she has satisfied one valid alternative provision of her original sentence, and her probationary term must be terminated.

Like Ms. Ianni, the defendant in *Little* was sentenced to a split sentence of imprisonment followed by probation. *See Little*, 78 F.4th at 454, 461. In vacating Mr. Little's sentence, the D.C. Circuit explained that "[p]robation and imprisonment are alternative sentences that cannot generally be combined," so that "the district court could not"—as was done here—"impose both for Little's petty offense." *Id.* at 454. Specifically holding that "a defendant may not get probation and imprisonment for a single petty offense," the Court made clear that the available sentences are "(1) probation, (2) a fine, (3) imprisonment, (4) probation and a fine, or (5)

---

[1] The applicable § 3553 factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) whether the sentence reflects the seriousness of the offense, promote respect for the law, provide just punishment, deters other criminal conduct, protects the public, and provides the defendant with training, medical care or other correctional treatment; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentencing disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)–(3), (6)-(7). Section 3553(a) also includes factors related to the United States Sentencing Guidelines, *see* 18 U.S.C. § 3553(a)(4)-(5), which do not apply to Ms. Ianni's misdemeanor conviction.

imprisonment and a fine." *Id.* at 456, 458. The Court underscored that this statutory scheme means that "[o]nce a petty offender is done with imprisonment he may move on with his life," with no further post-confinement monitoring. *Id.* at 459 (citing 18 U.S.C. § 3583(b)(3)).

Because imprisonment and probation were alternative punishments, by continuing on probation, Ms. Ianni is being twice punished for the same offense. But "[n]o one can be twice punished for the same crime or misdemeanor[.]" *Ex parte Lange*, 85 U.S. at 169. Indeed, the Supreme Court has said that "we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Id.* at 173.

Once Ms. Ianni completed her sentence of imprisonment, double jeopardy "then interposed its shield, and forbid that [s]he should be punished again for that offence" with probation. *Id.* at 176. "[W]hen the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected [her], the power of the court to punish further was gone." *Id.*

In *Ex parte Lange*, 85 U.S. 163, a defendant was convicted of stealing mailbags from the Post Office under a statute that carried a punishment of *either* imprisonment for up to one year *or* a fine of up to $200, but the trial court erroneously imposed the maximum of both punishments. After the defendant had paid his fine and spent five days in prison, the sentencing court attempted to correct its error by entering an order resentencing the defendant to one year in prison. The Supreme Court, however, held that because the defendant had "fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence," the court's "power to punish for that offence was at an end." *Id.* at 176. Thus, because

... 

the court's second order violated the Double Jeopardy Clause, the Supreme Court ordered that the petitioner be freed. *Id.* at 178.

Similarly, in *In re Bradley*, 318 U.S. 50, a defendant was found guilty of contempt and sentenced to six months in prison and a $500 fine. He began serving his prison sentence, and his attorney paid the fine three days later. The court thereafter realized that the relevant statute permitted imprisonment or fine, but not both, and it issued a new order amending the sentence to omit the fine but retain the imprisonment term, with instructions to return the fine to the petitioner. The Supreme Court held the court's new order to be "a nullity." *Id.* at 52. "As the judgment of the court was thus executed so as to be a full satisfaction of one of the two alternative penalties of the law, the power of the court was at an end." *Id.* Moreover, "[s]ince one valid alternative provision of the original sentence ha[d] been satisfied, the petitioner [was] entitled to be freed of further restraint." *Id.*

The same is true here. The power of this Court to continue its supervision of Ms. Ianni through the previously imposed sentence of probation is at an end now that she has fully served her alternative sentence of imprisonment. The interests of justice militate in favor of immediate termination of her probation.

### B. The § 3553(a) factors and Ms. Ianni's conduct on supervision favor immediate termination of her probation.

No individual sentenced for a single petty offense after *Little* will serve a sentence of imprisonment and probation. Maintaining Ms. Ianni's current term of probation will thus perpetuate an unwarranted sentencing disparity between Ms. Ianni and others convicted of petty offenses in contravention of 18 U.S.C. § 3553(a)(6) (requirement to avoid unwarranted

5

sentencing disparities).  This consideration alone favors termination of Ms. Ianni's probation forthwith.

The remaining § 3553(a) factors and Ms. Ianni's conduct on probation also support immediate termination.  At the original sentencing in this matter, this Court underscored that while January 6 was serious, "Ms. Ianni did not engage in any violence at all and, in my view, her conduct on January 6th was relatively mild." Sent'g Hr'g Trans. at 28.  As for her personal characteristics, this Court recognized as mitigating factors Ms. Ianni's age, her caretaking role for her family, her lack of any criminal history, and the "negative personal consequences from her very regrettable choice to participate in the breach of the Capitol," including the dissolution of her marriage and loss of friendships and local government positions. *Id* at 28-29.

The 15 days of federal imprisonment along with the nine months of probation Ms. Ianni has already served convey the seriousness of the offense and the need for deterrence and protection of the public.  18 U.S.C. § 3553(a)(2).  Indeed, the sentence Ms. Ianni has already served is harsher than most sentences handed down for petty offenses related to the events of January 6, 2021, and clearly reflects the seriousness of her offense.[2]  Moreover, the public is not in need of protection from Ms. Ianni, whom this Court has already recognized is "at quite a low risk of recidivism." Sent'g Hr'g Trans. at 29.  And the publicity surrounding January 6th defendants such as Ms. Ianni and the reality that a previously law-abiding person with no prior record could receive a sentence of federal imprisonment serve as strong deterrents, especially

---

[2] As of August 25, 2023, there were 341 cases where defendants have been sentenced on the petty misdemeanor offenses under 40 U.S.C. § 5104.  Of those 341 cases, 197 cases (nearly 60%) received no term of incarceration.  *Data available at* https://www.justice.gov/file/1594006/download.

since "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment," and that, in general, "[i]ncreasing the severity of punishment does little to deter crime."[3]

Finally, while Ms. Ianni's Probation Officer, Thomas C. Mullen, III, takes no position on this motion, he confirms that Ms. Ianni remains in compliance with her probationary terms and conditions; has paid her special assessment and restitution in full; and has exceeded the number of community service hours she was required to complete.[4] From the time of her guilty plea through her sentencing, imprisonment, and satisfaction of each condition of her probation Ms. Ianni has demonstrated her acceptance of responsibility and a respect for the rule of law. Given the unlawfulness of her sentence, Ms. Ianni asks for no more than the law commands—that her probation be terminated.

**IV.  Conclusion**

This Court has no further power to continue to punish Ms. Ianni for her offense of conviction, and under 18 U.S.C. § 3564(c), the interests of justice require termination of her probation. For these reasons and any others that the Court deems just and proper, Ms. Ianni respectfully requests that this motion be granted forthwith.

---

[3] National Institute of Justice, U.S. DOJ Office of Justice Programs, *Five Things About Deterrence* (2016), available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence.

[4] Ms. Ianni volunteered for 63.5 hours at St. Paul's Soup Kitchen in Lowell, Massachusetts, instead of the court-ordered 60 hours.

        Respectfully submitted,

        A. J. KRAMER
        FEDERAL PUBLIC DEFENDER

        _____/s/_____
        JOANNA MUNSON PERALES
        Research & Writing Attorney
        625 Indiana Ave. NW, Ste. 550
        Washington, D.C. 20004
        (202) 208-7500